# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 07-00633-TLM** |
| **BRANDON HAUN,** | ) | |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **BROOKE KILBORN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. No. 07-06033-TLM** |
| | ) | |
| **BRANDON HAUN,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION
_____

## BACKGROUND AND FACTS

Brandon Haun ("Defendant") filed his voluntary chapter 7 petition for

bankruptcy relief on April 23, 2007.  Brooke Kilborn ("Plaintiff") filed this

adversary proceeding seeking to except from discharge a debt Defendant owed to

her.  She alleged the debt was nondischargeable under § 523(a)(2)(A), § 523(a)(4)

MEMORANDUM OF DECISION - 1

and § 523(a)(6).[1]  Each cause was based on Plaintiff's December 21, 2005 loan of

$50,000.00 to Defendant, and what she contended was his promise to repay her

$100,000.00 on or before May 13, 2006.

On the day of the scheduled trial in the adversary proceeding before this

Court, counsel for the parties appeared and stipulated to the entry of a

nondischargeable money judgment in favor of Plaintiff.  *See* Doc. No. 24 ("minute

entry").[2]  However, the parties were not in agreement as to whether Plaintiff

should also recover attorneys' fees, and they stipulated that this contested issue

would be addressed through future submissions and arguments.[3]

Based on this understanding, Plaintiff filed a motion seeking attorneys' fees

---

[1]  Unless otherwise indicated, all statutory and rule citations are to the Bankruptcy Code, Title 11 of the U.S. Code §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure. Plaintiff also asserted a count based on Idaho's Racketeering Act (Idaho Code § 18-7801, *et seq.*). However, prior to the trial date, the parties stipulated to dismiss this claim.  *See* Doc. No. 21.

[2]  Though not set out in any pleading of the parties, the oral settlement was for a stipulated judgment of $60,000.00, such amount to be declared nondischargeable, with a covenant not to execute based upon a $5,000.00 payment within thirty days and additional yearly $5,000.00 payments for the next five years, such $30,000.00 (if paid) to constitute satisfaction of the $60,000.00 judgment and any attorneys' fees and costs awarded.  Default in the described payments would allow enforcement and execution of the full judgment, less credit for any payments actually made.  Though the parties did not specify at the time of hearing which of the pleaded § 523(a) claims applied to the agreed judgment, Defendant's initial brief opposing allowance of fees states that the judgment is based on § 523(a)(2).  *See* Doc. No. 26 at 2.

[3]  The agreement of the parties, as expressed orally to the Court, was clear that any fees and costs allowed in addition to the $60,000.00 agreed judgment would be satisfied by the completion of the $30,000.00 in periodic payments.  Thus, allowance of fees only becomes germane if Defendant defaults in the agreed payments, and Plaintiff seeks to collect such fees along with the unpaid portion of the $60,000.00 judgment.  Given the essentially contingent nature of the fees, why the parties did not simply negotiate a single settlement amount that would be inclusive of any claim to fees, avoiding the expense and delay of litigating these issues, was not explained.

MEMORANDUM OF DECISION - 2

of $16,050.00 and costs of $1,398.34. *See* Doc. No. 25. She also filed supporting

statements of counsel itemizing the same. *Id.* at attach. 1-2. Plaintiff also filed a

memorandum of authorities. *Id.* at attach. 3. Defendant objected and filed a

memorandum in opposition. *See* Doc. No. 26.[4]

    At the initial hearing on Plaintiff's fee request, the Court granted an

opportunity for supplemental briefing.[5] That briefing was filed. *See* Doc. Nos. 28,

29.

    Having reviewed and considered all of the parties' oral and written

arguments, relevant case law, and the record, the Court here enters its findings and

conclusions on the fee issue.

## DISCUSSION AND DISPOSITION

### A.    *Fobian* does not control, but neither does *Travelers*

    Prior to March, 2007, the Ninth Circuit Court of Appeals followed the so-

---

[4] Plaintiff's complaint alleged a right to recover attorneys' fees and costs, though without citing any authority. *See* Doc. No. 1 (complaint) at 6, ¶ XXIV. Defendant admitted the allegation. Doc. No. 5 (answer) at 1, ¶ 1. However, there is little discussion in the briefs about this admission in Defendant's answer, despite much debate over the application of various authorities to the request. In addition, notwithstanding Defendant's admission (intended or not), the relevant authorities make clear that Plaintiff must establish a right to recovery of fees. The Court therefore continues with its analysis of applicable law notwithstanding the admission in the answer.

[5] The parties' original briefing touched on the Supreme Court's decision in *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, __ U.S. __, 127 S.Ct. 1199 (2007), and the Court invited further briefing in light of this Court's decision in *Hopkins v. Saratoga Holdings, LLC (In re Colvin)*, 08.2 I.B.C.R. 63, 2008 WL 1957855 (Bankr. D. Idaho 2008), which in part addressed *Travelers* and went on to address attorneys' fees in the context of an adversary proceeding, including analysis of Idaho state law.

MEMORANDUM OF DECISION - 3

called *Fobian* rule when faced with requests for attorneys' fees in the context of

bankruptcy litigation.  *See Fobian v. Western Farm Credit Bank (In re Fobian)*,

951 F.2d 1149 (9th Cir. 1991).  Specifically, the Ninth Circuit ruled that:

"[W]here the litigated issues involve not basic contract enforcement questions, but

issues peculiar to federal bankruptcy law, attorney's fees will not be awarded

absent bad faith or harassment by the losing party."  *Id.* at 1153.  This Court had

applied *Fobian* in adversary proceedings, including dischargeability litigation

under § 523.  *See*, *e.g.*, *Jenkins v. Sroufe (In re Sroufe)*, 261 B.R. 35, 01.1 I.B.C.R.

38 (Bankr. D. Idaho 2001) (citing *Renfrow v. Draper*, 232 F.3d 688 (9th Cir.

2000); *Idaho First Nat'l Bank v. LeMaster (In re LeMaster)*, 147 B.R. 52, 92

I.B.C.R. 208 (Bankr. D. Idaho 1992)).

In March, 2007, the Supreme Court in *Travelers Cas. & Sur. Co. of Am. v.

Pac. Gas & Elec. Co.,* ___ U.S. ___, 127 S.Ct. 1199 (2007), abrogated the *Fobian*

rule.  However, even though the Supreme Court in *Travelers* rejected *Fobian*'s

blanket prohibition on recovery of post-petition fees incurred in litigating

bankruptcy issues, it declined to decide whether fees were recoverable in that case

and remanded that question, and further declined to address several other

arguments regarding the allowance and award of attorneys' fees.

The Ninth Circuit Bankruptcy Appellate Panel addressed the question of

attorneys' fees after *Travelers*.  *See Centre Ins. Co. v. SNTL Corp. (In re SNTL*

MEMORANDUM OF DECISION - 4

*Corp.*), 380 B.R. 204 (9th Cir. BAP 2007).[6]  So has this Court.  *See Hopkins v.
Saratoga Holdings, LLC (In re Colvin)*, 08.2 I.B.C.R. 63, 2008 WL 1957855
(Bankr. D. Idaho 2008).  *Colvin* determined that *Travelers* did not "precisely
control" the issue of attorneys' fees in the adversary proceeding there at issue, and
that *SNTL* was distinguishable.  *See Colvin*, 2008 WL 1957855, at *2, 08.2
I.B.C.R. at 64.[7]

This Court reaches the same basic conclusion as *Colvin*: neither *Travelers*
nor *SNTL* precisely control in the instant case.  But it further concludes that *Colvin*
itself is distinguishable since *Colvin*, like *Travelers* and *SNTL*, did not deal with an
adversary proceeding contesting dischargeability of debt under § 523(a).

### B.  *Cohen* controls

In July 2008, the BAP addressed, in a post-*Travelers* context, recovery of
attorneys' fees in § 523(a) litigation.  *See Levitt v. Cook (In re Levitt)*, BAP No.

---

[6]  *SNTL* found that "attorneys' fees arising out of a pre-petition contract but incurred
post-petition fall within the Bankruptcy Code's broad definition of claim."  380 B.R. at 221.
However, the Panel in *SNTL* remanded and instructed the bankruptcy court to evaluate a
determination of entitlement to fees "under the relevant contracts *or state law*."  380 B.R. at 223
(emphasis added).

[7]  In *Colvin*, a chapter 7 trustee sued Saratoga Holdings to recover damages for breach of
a pre-petition contract between Saratoga Holdings and the debtor.  The trustee was unsuccessful,
and the issue was the ability of Saratoga Holdings to recover attorneys' fees against the estate.  In
analyzing the fee issue, the Court distinguished *SNTL* because Saratoga Holdings, unlike the
creditor in *SNTL*, did not have a provision in its pre-petition contract authorizing recovery of
litigation costs and Saratoga Holdings was not attempting to add post-petition attorneys' fees to a
pre-petition claim as was the case in *SNTL*.  2008 WL 1957855, at *2.

MEMORANDUM OF DECISION - 5

AZ-07-1166 (9th Cir. BAP July 22, 2008).[8]  In *Levitt*, the bankruptcy court held

certain debts arising from the presentation of checks not supported by sufficient

funds and from misrepresentations as to the ownership of collateral were

nondischargeable under § 523(a)(2).  The bankruptcy court also awarded the

creditor plaintiff attorneys' fees.  The BAP affirmed the nondischargeability

judgment, but reversed and remanded the fee award.

In regard to the attorneys' fees, *Levitt* states:

> Citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec.*, __
> U.S. __, 127 S.Ct. 1199 (2007), Creditor sought and recovered
> attorneys' fees incurred in prosecuting the section 523 action.  While
> we agree that *Travelers* and our decision in *Centre Ins. Co. v. SNTL
> Corp. (In re SNTL Corp.)*, 380 B.R. 204, 223 (9th Cir. BAP 2007),
> support the proposition that an unsecured creditor may assert a
> postpetition claim against the estate if governing contracts and state
> law permit such fees, these cases apply to claims against the estate and
> not to nondischargeable claims against a debtor.  Instead, *Cohen v. de
> la Cruz*, 523 U.S. 213 (1998), governs.
>
> In *Cohen*, the Supreme Court held that the discharge exception
> set forth in section 523(a)(2)(A) applies to all liability arising on
> account of the fraudulent conduct, including attorneys' fees and costs.
> *Cohen*, 523 U.S. at 223.  That said, to recover attorneys' fees under
> *Cohen*, the creditor must be able to recover the fees outside the
> bankruptcy court under state or federal law.  *Bertola* [*v. Northern
> Wisconsin Produce Co., (In re Bertola)*], 317 B.R. [95] at 99-100 [(9th
> Cir. BAP 2004)].

---

[8]  *Levitt* was designated by the BAP as a "memorandum" and "not for publication."  It
can be found on the BAP's website (http://207.41.19.15/web/bap.nsf/memos+by+date).  Pursuant
to Fed. R. App. P. 32.1, *Levitt* may be cited, notwithstanding 9th Cir. BAP Rule 8013-1, and the
*Levitt* memorandum itself notes that the decision may be cited for whatever persuasive value it
contains.  *Levitt* at note 1.

MEMORANDUM OF DECISION - 6

*Levitt*, at 14-15 (emphasis added).[9]

The BAP then proceeded in *Levitt* to consider two Arizona statutory provisions advanced by the creditor plaintiff in support of the proposition that fees would be recoverable.  It concluded that one (allowing a prevailing party fees in a "contested action arising out of a contract") was not shown to be applicable.  It decided, however, that the other (allowing for recovery of fees "on the basis of time and effort expended" in pursuing relief for fraudulently tendered NSF checks) might apply but that the creditor had not shown which portion of the asserted fees was attributable to that aspect of the action.  The matter was remanded so that such an apportionment of fees could be made.  *Id.* at 15-16.

The fundamental distinction made in *Levitt* between claiming fees against the estate or against the debtor is apropos.  *Cohen* addresses the recovery of attorneys' fees against a debtor in nondischargeability litigation, the situation presented in *Levitt* and that presented here, while *Travelers*, *SNTL* and *Colvin* all

---

[9]  In *Cohen*, the bankruptcy court determined that a debtor had committed actual fraud and that the debtor's "unconscionable commercial practice" violated the New Jersey Consumer Fraud Act, calculated the liability for such fraud under state law which specifically included treble damages and attorneys' fees, and concluded the entire fraud debt, including attorneys' fees and punitive damages, was nondischargeable under § 523(a)(2)(A).  Upon appeal, the Supreme Court ruled that the exception to discharge set forth in § 523(a)(2)(A) incorporated all liabilities, including attorneys' fees and punitive damages, that arose as a result of the fraudulent conduct.  523 U.S. at 217-23.  It found the phrasing of § 523(a)(2)(A) made clear that "Once it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge" which included de la Cruz' liability for treble damages and attorneys' fees.  *Id.* at 218.

MEMORANDUM OF DECISION - 7

involve assertion of fee claims against the estate.[10]

*Bertola*, a case cited by the BAP in *Levitt*, summarized the development of authority governing recovery of fees in § 523 litigation:

> In federal courts, attorneys' fees ordinarily are not recoverable by the prevailing party in an action except by contract or by statute. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This principle is known as the American Rule.
>
> In addition to the American Rule, there is no general right to recover attorneys' fees under the Bankruptcy Code. *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). Instead, whether fees may be awarded in bankruptcy proceedings generally depends, in part, on whether the case involves state or federal claims and whether the applicable law allows such fees. "[A] prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings." *Id.*; *see also Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1126-27 (9th Cir. 1996).
>
> In cases under § 523(a)(2), however, "the determinative question . . . is whether the successful plaintiff could recover attorney's fees in a non-bankruptcy court." [*AT&T Universal Card Servs. Corp. v.*] *Pham* [(*In re Pham*)], 250 B.R. [93] at 99 [(9th Cir. BAP 2000)]. In *Pham*, we held that the general rule of *Baroff* and *Hashemi* no longer retain any vitality with respect to cases under this section in light of *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). *Cohen* held that a bankruptcy court could determine the "debt" in a proceeding under § 523(a)(2)(A) to include attorneys' fees and costs. *Id.* at 223, 118 S.Ct. at 1212. Thus if Northern Wisconsin could recover attorneys' fees in a non-bankruptcy court on its action under § 523(a)(2), those fees will be recoverable.

---

[10]  However, *Colvin*'s analysis of Idaho Code § 12-120(3), Idaho R. Civ. P. 54(e), and allowance of costs remain instructive.

MEMORANDUM OF DECISION - 8

317 B.R. at 99-100.[11]

The last line of *Bertola* here quoted – indicating that the critical question is whether the creditor "could recover attorneys' fees in a non-bankruptcy court on its action under § 523(a)(2)" – is imprecise.  There can be no "§ 523(a)(2) action" in state court, since "state courts lack jurisdiction to adjudicate § 523(a)(2) actions."  *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 904 (9th Cir. 2001) (noting that "[b]ankruptcy courts and state courts have concurrent jurisdiction over all nondischargeability actions except those brought under § 523(a)(2), (4), (6) and (15).").

This language of *Bertola* cannot, therefore, be read literally.  In light of *Cohen* and *Pham*, the inquiry instead must be whether the creditor plaintiff would be entitled to fees in state court for establishing those elements of the claim which the bankruptcy court finds support a conclusion of nondischargeability.

In this case, the Court concludes that the parties' stipulation creates a nondischargeable judgment under § 523(a)(2)(A).[12]  Not only does this appear to

---

[11]  As in *Levitt*, the Panel in *Bertola* analyzed whether the Arizona statute providing for attorneys' fees in actions "arising out of a contract" applied.  317 B.R. at 100-02 (addressing A.R.S. § 12-341.01(A)).

[12]  Section 523(a)(2)(A) provides in pertinent part: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt – (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud[.]"  Nothing in this action suggests that § 523(a)(2)(B) is implicated.

MEMORANDUM OF DECISION - 9

be the basis of the judgment, *see* note 2 *supra*, it is the only one of the three initially pleaded § 523(a) causes that was later argued by the parties in their briefing on the subject of fees.  So, here, the Court must consider whether Plaintiff would be entitled to recover fees in an Idaho state court for establishing the existence of a fraud debt owed to her by Defendant.

### C.    Fees under Idaho law

Generally, a party claiming attorneys' fees must assert the specific statute, rule or case authority supporting its claim.  *Colvin,* 08.2 I.B.C.R. at 65, 2008 WL 1957855, at *4.  Here, two provisions are effectively asserted: Idaho Code § 12-121 and § 12-120(3).[13]

### 1.    Idaho Code § 12-121

Idaho Code § 12-121 states:

> In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees. The term "party" or "parties" is defined to include any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

The statute is limited by Idaho R. Civ. P. 54(e)(1) which states "attorney fees under section 12-121, Idaho Code, may be awarded by the court *only when it*

---

[13]  Plaintiff also cites as authority "Fed. R. Civ. P. 54(d) and 54(e)."  *See* Doc. No. 25, attach. 3 at 2.  However, Fed. R. Bankr. P. 7054(a) incorporates only Fed. R. Civ. P. 54(a)-(c), and not Fed. R. Civ. P. 54(d), rendering Rule 54(d) inapplicable in bankruptcy cases.  *See*, *e.g.*, *Palmer v. Downey (In re Downey)*, 00.1 I.B.C.R. 36, 2000 WL 33716975 (Bankr. D. Idaho 2000).  Further, there is no Fed. R. Civ. P. 54(e).  These additional citations are thus ineffective.

MEMORANDUM OF DECISION - 10

*finds, from the facts presented to it*, that the case was brought, pursued or defended frivolously, unreasonably or without foundation." *Id.* (emphasis added). The determination of whether a case was frivolously or unreasonably pursued falls within the sound discretion of the trial court.[14]

Here, despite the impassioned arguments of Plaintiff's counsel at hearing and in briefing that the case was unreasonably defended, the Court never had "facts presented to it" upon which to evaluate the assertions. First, the case was not tried. The Court thus had no opportunity to evaluate the nature of Defendant's case, the character or nature of his legal or factual defense(s), or his trial conduct. Second, at the hearing on the issue of attorneys' fees, Plaintiff offered no evidence nor did she otherwise attempt to make any showing regarding why Defendant's conduct fell within Idaho Rule of Civil Procedure 54(e)(1).

Plaintiff argues that Defendant's stipulation to judgment on the day of trial is indicative of his bad faith defense, and suggests this reflects Defendant never had legitimate defenses to the causes of action in her complaint. The Court cannot

---

[14] In *Thomason Farms, Inc. v. Thomason (In re Thomason)*, Adv. No. 04-6134-JDP, Doc. No. 240 (Bankr. D. Idaho Dec. 7, 2006), the Court stated that an award under this statute "is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Id.* at 10 (quoting *McGrew v. McGrew*, 82 P.3d 833, 844 (Idaho 2003)). Further, the court must take into account the entire course of the litigation and, "if there is a legitimate, triable issue of fact," an award of fees under I.C. § 12-121 is improper even though the losing party may have also asserted factual or legal claims that are frivolous, unreasonable, or without foundation. *Id.*

MEMORANDUM OF DECISION - 11

make such a finding solely from the act of settlement.  Settlements prior to trial,

even the morning of trial, are not uncommon.  Settlements rarely include any

acknowledgment of the merits of the opposing party's case or a concession of the

lack of merit to one's own case.  Nothing in the orally announced settlement on

the day of trial here suggested Defendant conceded that defenses raised were

frivolous, unreasonable or lacked foundation.[15]  The mere fact of settlement does

not constitute a basis for awarding fees under Idaho Code § 12-121.

In the absence of a trial, and with no hearings ever conducted other than a

pre-trial conference and the fee hearing itself, the Court has little record to

evaluate.  That record is insufficient to establish the requisite "abiding belief" the

Court must have in order to impose fees under this provision.

The request made under Idaho Code § 12-121 will be denied.

### 2.    Idaho Code § 12-120(3)

Idaho Code § 12-120(3) states:

In any civil action to recover on an open account, account stated, note,

---

[15]  In analyzing these issues, the Court recognizes that Defendant's answer to the
complaint is somewhat confusing.  He denies the allegations of complaint ¶ II (regarding the loan
and promise to repay), and denies the "veracity of [the state court] allegations" referenced in
complaint ¶ IV.  But he admits the allegations of complaint ¶ III, which recite several (but not all)
of the elements of fraud.  He also then asserts as affirmative defenses that fraud was not pleaded
by Plaintiff with sufficient specificity, and that Plaintiff did not justifiably or reasonably rely on
any representations.  *See* Doc. No. 5.  It would appear that there was a triable issue on which
Plaintiff had the burden of proof – that Defendant was not merely liable for breach of an oral
contract to repay Plaintiff her loan within six months with significant interest but, in addition, had
made fraudulent representations on which she had justifiably relied.  Under *McGrew*, *see* note 14
*supra*, a legitimate triable issue defeats an award under Idaho Code § 12-121.

MEMORANDUM OF DECISION - 12

bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

Under this provision, the Court must determine if Plaintiff is a "prevailing party" and whether the gravamen of the litigation dealt with a "commercial transaction." Neither the absence of a proven contract, nor the fact that Plaintiff's claim is based on fraud, precludes operation of Idaho Code § 12-120(3). *See Blimka v. My Web Wholesaler, LLC*, 152 P.3d 594, 599-600 (Idaho 2007) (holding that "[f]rom time to time the Court has denied fees under I.C. § 12-120(3) on the commercial transaction ground either because the claim sounded in tort or because no contract was involved. The commercial transaction ground in I.C. § 12-120(3) neither prohibits a fee award for a commercial transaction that involves tortious conduct . . . nor does it require that there be a contract. Any previous holdings to the contrary are overruled.").

### a.      Plaintiff was the prevailing party

As Defendant stipulated to a $60,000.00 judgment in favor of Plaintiff and the nondischargeability of that debt under § 523(a)(2)(A), it is clear that Plaintiff is the prevailing party on that cause. The fact that, in settling the case in this fashion, Plaintiff did not recover on her § 523(a)(4) and (6) causes of action does not require a contrary conclusion. *See Eighteen Mile Ranch, LLC v. Nord*

MEMORANDUM OF DECISION - 13

*Excavating & Paving, Inc.*, 117 P.3d 130, 133 (Idaho 2005) (determining that

prevailing party is determined "from an overall view, not a claim-by-claim

analysis").  In the most basic sense of the term, Plaintiff "prevailed" in the

litigation.

### b.    The action involved a "commercial transaction"

The Idaho Code defines "commercial transaction" as "all transactions

except transactions for personal or household purposes."  Idaho Code § 12-120(3).

In determining if the transaction in *Blimka* was a commercial transaction, the

Idaho Supreme Court noted that "[a] transaction involving the sale of 26,500 pairs

of jeans is not made for personal or household purposes.  Rather, it is a business or

commercial transaction, as Blimka obviously intended to market the jeans rather

than wear them."  152 P.3d at 599.  Thus, the focus must be on the purpose of the

transaction.

Again, the absence of a trial leaves the Court in a difficult posture.  There

was no evidence presented as to the details of the transaction or the purpose of the

loan.  There are, however, certain parts of the pleading record in this adversary

proceeding and in Defendant's underlying chapter 7 case that are relevant to the

question.[16]

---

[16]   The Court takes judicial notice of the files and records in Case No. 07-00633-TLM.
*See* Fed. R. Evid. 201.  The submissions in that case made by Defendant under penalty of perjury,
such as in his sworn schedules and statement of financial affairs, may be treated as evidentiary
(continued...)

MEMORANDUM OF DECISION - 14

Defendant listed Plaintiff on his schedule F (unsecured creditors).  Though

he scheduled her as holding a contingent, disputed and unliquidated claim,

Defendant styled the nature of that claim as an "alleged loan *for real estate

investment*."  Case No. 07-00633-TLM at Doc. No. 17 (emphasis added).

Defendant's pre-trial brief, while not evidence, does not contradict his description

of the transaction found in his sworn schedules.  *See, e.g.*, Doc. No. 19 at 5-6

(characterizing Plaintiff's actions as an investment of money with Defendant to

buy real properties).  In sum, there is nothing in this record to suggest the

$50,000.00 loan Plaintiff made to Defendant was for personal or household

purposes.  The weight of what is before the Court, though perhaps slight, is to the

contrary.

   *Blimka*'s transaction involving 26,500 pair of jeans was found to be a

business or commercial transaction "as Blimka obviously intended to market the

jeans rather than wear them."  152 P.3d at 599.  Here, Plaintiff's advance of

$50,000.00 to Defendant was similarly for business investment and profit rather

than, for example, the purchase of her personal residence.  *Cf. Bajrektarevic v.

Lighthouse Home Loans, Inc.*, 155 P.3d 691, 694 (Idaho 2007) (determining that

---

[16](...continued)
admissions under Fed. R. Evid. 801(d).  *See Scott v. Countrywide Home Loans, Inc. (In re Scott)*,
376 B.R. 285, 288 n.2, 07.3 I.B.C.R. 60 n.2 (Bankr. D. Idaho 2007) (citing *In re Schweizer*, 354
B.R. 272, 278 n.3 (Bankr. D. Idaho 2006); *In re Moore*, 269 B.R. 864, 869 n.7, 01.4 I.B.C.R.
147, 149 n.7 (Bankr. D. Idaho 2001)).

MEMORANDUM OF DECISION - 15

the refinancing of a home loan was for personal or household purposes and did not constitute a commercial transaction).

The subject transaction is found to be "commercial" in nature within the Idaho Supreme Court's construction of that term, and this prong of Idaho Code § 12-120(3) is met.

### c.    Establishing the amount of fees

Since Plaintiff was the prevailing party, and since a commercial transaction was involved, Plaintiff is entitled to recover "a reasonable attorney's fee to be set by the court."  Idaho Code § 12-120(3).  As stated in *Colvin*, "while the award of attorney's fees is mandatory, the amount thereof is subject to the Court's discretion."  08.2 I.B.C.R. at 66, 2008 WL 1957855, at *6 (citing *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 159 P.3d 870 (Idaho 2007)).  *Colvin* notes that, under Idaho law, several factors are to be considered.  *Id.* (citing Idaho R. Civ. P. 54(e)(3)).  *See also Wiggins v. Peachtree Settlement Funding (In re Wiggins)*, 02.1 I.B.C.R. 8, 9-13 (Bankr. D. Idaho 2002) (addressing Idaho R. Civ. P. 54(e)(3) standards, there applicable under Idaho Code § 12-121 and § 48-608).

Plaintiff's counsel filed a statement to support the request of $16,050.00 in fees.  Doc. No. 25, at attach. 1.  The assertions in that statement are aimed at the standards under Idaho R. Civ. P. 54(e)(3)(A), (B), (C), and (D).  These subparts of the Rule address the factors of time and labor required; novelty and difficulty of the questions presented; the skill required to perform the legal services properly,

MEMORANDUM OF DECISION - 16

and the experience and ability of the attorney; and the prevailing charges for like work. The statement raises a number of problems and concerns.

(1)     There are several entries in counsel's affidavit for services rendered in April, 2007. They total 5.3 hours. All address in some fashion the existence of a bankruptcy filing, including the impact of bankruptcy filing on the state court action. Defendant, however, did not file his petition for bankruptcy relief until April 23, 2007, raising obvious issues as to the bulk of this time.

The Court did independently determine that Cheri Haun, a co-defendant in Plaintiff's state court action, filed a chapter 7 petition on April 9, 2007.[17]  This seems to explain a reference in the April 11 time entry to "bankruptcy of Cheryl Haun" but does not explain entries on April 9, 11 or 12 seemingly referring to a bankruptcy by Defendant.[18]

In any event, the Court concludes that all these April services are outside the scope of this adversary proceeding which did not commence until July, 2007. As such, compensation for these services will not be awarded as part of the attorneys' fees for this litigation. The total time sought will be reduced by 5.3 hours.

---

[17]  The Court takes judicial notice of the record in Case No. 07-00542-TLM filed by Cheri Michelle Anderson, *fka* Cheri Michelle Haun on April 9, 2007. *See* Fed. R. Evid. 201.

[18]  There also seems to be excessive time claimed for certain of the services. For example, on April 13, 2007, counsel lists .8 hours (*i.e.*, 48 minutes) for "Letter from atty French with Bankruptcy Court Opinion concerning automatic stay."

MEMORANDUM OF DECISION - 17

(2)     Counsel's statement asserts that "extensive" time and labor were required "because of the unusual technical nature of this case and the detailed facts."  Doc. No. 25 at attach. 1, p.3, ¶ 7.  It also states: "This case presented novel, difficult and diverse legal questions.  The case presented unusual legal issues concerning fraud, dischargeability issues and collection issues."  *Id.* at ¶ 8.

The Court concludes these several assertions are overstated.  The action has a basic, straight-forward premise – Defendant solicited an investment from Plaintiff upon the promise of a substantial return in a short period of time, a promise Plaintiff claimed was fraudulent.  Rather than presenting "unusual," "technical," "novel," "diverse" or "difficult" issues, the claims varied little from most fraud contentions and, from what was provided to the Court (such as the statements at the pre-trial conference, the pre-trial briefing, and copies of discovery during an aborted compulsion motion), there were few if any esoteric issues.[19]

This issue informs the ultimate conclusion on the reasonable amount of fees to be awarded, addressed below.

_____

[19]   The only out-of-the-ordinary "dischargeability" issues stemmed from Plaintiff's decision to assert § 523(a)(4) and § 523(a)(6) as alternative theories to fraud under § 523(a)(2), an arguably questionable decision given the specific evidentiary showings required to obtain relief under those two sections.  There were no "unusual legal issues" identified in connection with the fraud claim, which appeared instead to invite application of the facts as proven at trial to the several well-established elements of that cause of action (knowingly false representation, justifiable reliance, etc.).  That there were "collection" issues, before a judgment was even obtained, is doubtful, beyond perhaps the consideration of the potential value of a nondischargeable judgment against a "no-asset" chapter 7 debtor such as Defendant.

MEMORANDUM OF DECISION - 18

(3)    The affidavit "lumps" all legal services rendered on a given date into a single time entry for that date, rather than describing the time spent on discrete services.  For example, the entry for 10.5 hours on February 19, 2008 states:

> Prepare for trial; telephone conference with atty French and client re: possible settlement; prepare subpoenas for Haun bank records and serve.

Doc. No. 25 at attach. 1, p.6.  The entry for 8.0 hours of services on February 20, 2008 states:

> Prepare for trial; negotiate settlement with atty French and client; place stipulation on record and prepare Memorandum of atty fees and costs.

*Id.*[20]

"Listing only the total charge for lumped services deprives the Court of the ability to weigh the reasonableness of either the amount of time spent or the amount charged for the individual services."  *Colvin*, 08.2 I.B.C.R. at 66, 2008 WL 1957855, at *6; *see also In re Jones*, 356 B.R. 39, 45-46 (Bankr. D. Idaho

---

[20]  Beyond the lumping problems, the "February 20" entry cannot be an accurate entry. The trial setting, and thus the reading of the stipulation into the record, was on March 5, 2008, not on February 20, 2008.  Further, even assuming this entry was meant to refer to March 5 and not February 20, the trial setting on March 5 was at 9:00 a.m., making the "trial preparation" and "negotiation" components of that day's lumped entry necessarily short.  The parties appeared that morning, and the entry of the settlement on the record was brief.  That the entire balance of this 8.0 hour work day related to preparing the attorneys' fees submission is not established and would be excessive.  The Court will allow for services on March 5 a total of 2.0 hours for the trial preparation, negotiation and placement of the settlement on the record.  An additional 3.0 hours will be allowed for drafting the submissions on attorneys' fees and costs, a generous figure given the errors in those submissions and the rather sparse and summary citation to and analysis of authority within that memorandum.  This amounts to a 3.0 hour reduction in fees for the "February 20"/March 5 entry.

MEMORANDUM OF DECISION - 19

2005).[21]  The February 19 and 20 examples are but two of several such lumped
entries.

      (4)     There are additional issues with certain other entries.

      Counsel asserts a 1.0 hour charge on October 22, 2007, for the pre-trial
conference in this adversary proceeding.  Again there is a date error; the pre-trial
conference actually occurred on October 17, not October 22.  In addition, the hour
claimed is not consistent with the Court's recall of the amount of time involved,
which would have justified a charge of no more than .5 hours.[22]  As no other
service is described in this entry, the additional .5 hour charge cannot be allowed.

      Counsel also asserts a charge of 1.0 hour on October 30, 2007, to "forward
state court discovery to [Defendant's counsel]."  If the entry is to reflect that
counsel gave instructions to administrative or clerical staff to forward the
discovery materials from the files, the time claimed is excessive.  If the entry is

---

[21]  In bankruptcy practice, a "lodestar" fee is established by multiplying time that is
actually, necessarily and reasonably expended on legal services by an appropriate hourly rate for
an attorney qualified to perform such services.  *See In re Jordan*, 00.1 I.B.C.R. 46, 48 (Bankr. D.
Idaho 2000) (citing *In re For-Rose Plumbing, Inc*., 99.2 I.B.C.R. 69, 71 (Bankr. D. Idaho 1999);
*In re Western Quay Assoc. Ltd. P'ship*, 94 I.B.C.R. 193, 194 (Bankr. D. Idaho 1994)).  Lumping
affects the Court's ability to determine the time that is actually, necessarily and reasonably
expended on a particular task.  *See also Thomas v. Namba (In re Thomas)*, BAP No. CC-07-1053
at 21-25 (9th Cir. BAP Nov. 5, 2007) (unpublished mem.) (noting that lumping or block billing is
a "universally discouraged" practice that justifies a court's reduction or elimination of
compensation, and reversing bankruptcy court for having "clearly erred" in finding the lumping
problem insignificant and awarding fees as requested).

[22]  Though the Bankruptcy Judges of this Court vary in their approach, the undersigned
holds pre-trial conferences in virtually all adversary proceedings.  Experience has shown that
except in the most complicated of multi-party cases, such conferences take no more than 30
minutes (and some much less), leading to a regular practice of setting such conferences in half
hour intervals.  The undersigned personally conducts such conferences.

MEMORANDUM OF DECISION - 20

meant to indicate that counsel personally performed the task, it is noncompensable clerical work rather than compensable legal services. This 1.0 hour charge will be disallowed.

(5)     The affidavit proposes a rate of $300.00 per hour for the legal services itemized. There is nothing proffered to support this hourly rate beyond counsel's own assertion that it is appropriate for the type of services rendered in this case and for a lawyer of his experience.

This Court regularly reviews and considers rates for attorneys hired in complex chapter 11 proceedings and by bankruptcy trustees. It also often hears evidence or argument concerning rates of Idaho counsel, not just in bankruptcy cases but in commercial litigation generally. Moreover, this Court regularly tries adversary proceedings involving allegedly fraudulent business transactions. Even given the years of counsel's years of experience, the $300.00 hourly rate is higher than the rates this Court has seen charged by skilled counsel in the Boise area trying cases of the sort involved here.

Since $300.00 per hour is, in the Court's experience, high for the sort of commercial litigation here involved, and in the absence of a showing to support that rate, the Court will adjust the hourly rate to $225.00 per hour – a rate well within the range of rates it has seen other comparably experienced lawyers in this

MEMORANDUM OF DECISION - 21

part of Idaho[23] charge in similar adversary litigation over dischargeability and commercial disputes – and will apply that rate to the time entries set out in the affidavit remaining after the specific reductions above noted.

After those reductions, the time that was actually, necessarily and reasonably expended on legal services in this case, according to the balance of the submissions, totals 43.7 hours.[24]  The application of the rate of $225.00 per hour to that time yields a total attorneys' fee of $9,832.50.

In considering all the factors set out in Idaho R. Civ. P. 54(e)(3), and the specific issues noted in this Decision, the Court concludes that the fees requested are excessive but that an appropriate and reasonable attorneys' fee is $9,832.50, and that amount is awarded under Idaho Code § 12-120(3) and the Idaho Rules.[25]

### D.    Costs

Costs are a procedural matter and are taxed under LBR 7054.1.  *Colvin*, 08.2 I.B.C.R. at 67; *Oldemeyer v. Couch-Russell (In re Couch-Russell)*, 04.1 I.B.C.R. 9, 11 (Bankr. D. Idaho 2004); *Thomason Farms, Inc. v. Tri-River*

---

[23]  The Court focuses on this area, rather than northern or eastern Idaho.  *Compare Colvin*, 08.2 I.B.C.R. at 66 (determining recently that $175.00 per hour, "[w]hile perhaps on the high end of the range for legal services in eastern Idaho," was reasonable).

[24]  Plaintiff claimed a total of 53.5 hours of compensable time.  After eliminating 5.3 hours in April, 2007, unrelated to the adversary proceeding; 3.0 hours associated with the lumped "February 20" time entry; .5 hours associated with the October 22 entry; and 1.0 hour for the October 30 entry, 43.7 hours remain.

[25]  All other concerns or issues identified by the Court or raised by Defendant in his opposition are subsumed within the above reductions.

MEMORANDUM OF DECISION - 22

*Chemical Co. (In re Thomason Farms, Inc.)*, 02.2 I.B.C.R. 107, 109 (Bankr. D. Idaho 2002).  To comply with LBR 7054.1(a), a cost bill must itemize costs and be supported by a certificate of counsel attesting that the costs are correctly stated, were necessarily incurred, and are allowed by law.  Under LBR 7054.1, taxable costs include: clerk's fees and service fees; costs of trial or other transcripts if requested by the Court or prepared pursuant to stipulation; deposition costs; witness fees, mileage and subsistence; costs of reproducing exhibits; costs of maps, diagrams and charts; and other costs with prior court approval.[26]

Defendant argues that the format of Plaintiff's request does not comply with the Local Rule.  While Plaintiff's approach invites such criticism, the Court has reviewed the "statement" of Plaintiff's counsel and finds that the material requirements of LBR 7054.1 as to counsel's "certification" are satisfied.  What is not clear, however, is that all the costs certified as falling within the Local Rule in fact fall within it.

Plaintiff claims costs for or related to four depositions of Defendant, all of which occurred in 2006.  This was well before the July 24, 2007, commencement of the instant adversary proceeding.  It appears clear enough that they were taken in or in connection with the state court action.  This Court only taxes costs incurred

---

[26]  LBR 7054.1 requires the prevailing party to serve and file its bill of costs within 14 days of entry of judgment.  Here, judgment has not been entered.  Therefore, an award of costs could be considered premature.  However, at the time the stipulation was entered on the record, both parties agreed to address attorneys' fees and costs in this manner.

MEMORANDUM OF DECISION - 23

in connection with the adversary proceeding filed and prosecuted before it.  *See, e.g.*, LBR 7054.1(c)(9) (referencing the requirements of 28 U.S.C. § 1924 which, in turn, requires the taxed costs be "necessarily incurred *in the case*").[27] Defendant's objection to these costs will be sustained.[28]

Plaintiff's costs for the adversary proceeding filing fee ($250.00) will be allowed.  *See* LBR 7054.1(c)(1).  The costs claimed for the March 6, 2007 deposition of Plaintiff ($197.92) will also be allowed.  *See* LBR 7054.1(c)(3).

**CONCLUSION**

Based on the foregoing, Plaintiff will be allowed and awarded attorneys' fees under Idaho Code § 12-120(3) and other applicable authority in the amount of $9,832.50, and allowed and awarded reimbursement of costs under Fed. R. Bankr. P. 7054(b) and LBR 7054.1 in the amount of $447.92.  An order in accord with this Decision will be entered by the Court.

---

[27]  This Court's Bill of Costs form, following both 28 U.S.C. § 1924 and Procedural Form 263, requires a signed declaration of counsel that the costs claimed "are correct and were necessarily incurred *in this action*[.]")

[28]  The objection to the 2006 charges for computerized legal research (totaling $16.67) will also be sustained.  First, such costs suffer the same timing problems as the four 2006 depositions, and second, costs incurred doing legal research are not listed as taxable costs under LBR 7054.1(c).  *See High Country Bed & Breakfast, Inc. v. AMRESCO Independence Funding, Inc., (In re High Country Bed & Breakfast, Inc.)*, 02.2 I.B.C.R. 89, 90 (Bankr. D. Idaho 2002) (noting that Westlaw research was not a cost that was allowable under LBR 7054.1).

MEMORANDUM OF DECISION - 24

DATED:  September 25, 2008



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 25